(129 So. 729)

## HARTMAN et al. v. LONGSHOREMEN PROTECTIVE UNION BENEVOLENT ASS'N.

### No. 30616.

### July 2, 1930.

Gill & Simon, George Wray Gill, and Warren M. Simon, all of New Orleans, for appellants.

L. H. Gosserand, of New Orleans, for appellee.

ST. PAUL, J.

This is an action to appoint a receiver to the defendant corporation. From a judgment refusing to appoint a receiver, the plaintiffs appeal.

The defendant is a benevolent and mutual aid association; it is also a labor union. It has a membership of over 2,000, and plaintiffs are only 12 in number. No creditor is complaining.

The defendant has practically no assets, and its only sources of income are the small monthly dues of its members and a percent-

age of the weekly wages of the members who are at work.

The evidence shows that the defendant is working satisfactorily; that it is keeping its members together as a labor union, and is providing relief to such members as are in need thereof, to wit, funerals, doctor's services, drugs, and cash relief.

To appoint a receiver for the defendant would be simply to dissolve this labor union and benevolent association against the wishes and interest of more than 2,000 of its members, and leave nothing, or practically nothing, for the receiver to administer. For it is manifest that neither a labor union nor a mutual aid association can be operated by a receiver as a going concern. Its sources of income would at once be cut off, and, as we have said, there would be nothing for the receiver to distribute. Hence it is clear that a receiver ought not to be appointed unless there be evidence of such gross mismanagement on the part of its officers that the very effect thereof would be to hasten instead of delaying or avoiding the dissolution of the corporation to the manifest prejudice of its members. In other words, this corporation must be dissolved, or it must be rehabilitated either by its own officers with the assistance of its members or by a receiver alone and unaided, which last is impossible.

We do not think that the alleged mismanagement of the officers of the corporation is such as hastens the dissolution of the corporation.

It is charged that moneys received by the funeral secretary were not turned over to the treasurer, as required by the constitution; but this is explained by the fact that the treasurer refused to pay warrants upon him because his outstanding checks equaled or exceeded the amount of his balances in bank. This condition occurred only within a few weeks of this application for a receiver. And the reason why the financial secretary did not pay to the treasurer the amounts received by him was that, in the opinion of the officers, the amounts paid in cash by the financial secretary were for relief to the members, and of a character more pressing than the bills which the treasurer desired to pay, and that it had long been the custom of the association for the financial secretary to pay such claims in cash and turn over the vouchers to the treasurer as cash against cash.

It is charged that the president of the association bought an automobile for the use of the association when there was no use for such an automobile. But the evidence shows that the association had an automobile, which, however, was in such poor condition as to be in constant need of repair, and that the association in general meeting concluded, against the wishes of the president, to buy a new automobile rather than pay constantly for repairs on the old.

It is charged that the financial secretary failed to furnish bond, as required by the constitution, within 30 days after his election. But the evidence shows that the association in general meeting unanimously extended this delay for another 30 days, and within that time the bond was furnished.

It is charged that the president borrowed $500 on the credit of the association without authority. But it is shown that the association in general meeting approved the borrowing of the money and the use the president made of it.

It is charged that the present administration has incurred large debts, which the association cannot pay. But the evidence shows that these large debts were incurred by a previous administration, and that the pres-

ent administration has paid all its own current expenses and has reduced somewhat the outstanding bills of the former administration, except in one instance, and that is the undertaker; but it is shown that during the present administration there has been an unusual number of deaths among the members, and that, in consequence thereof, the present administration has not been able to meet all the funeral bills even during its own incumbency. Hence the undertaker's bill has increased; but the association has credit with the undertaker, and the deceased members are being buried as usual.

The fact of the matter is that the association is functioning normally under the present administration to the entire satisfaction of all but 12 out of its more than 2,000 members, and none of its creditors are complaining; but, owing to very depressed labor conditions at the present time, its receipts are for the present much less than during normal times, whilst the usual calls upon the association have not diminished.

We are of opinion that the present administration is doing the best it can under the present handicapped condition of the association, and will, with the aid of the members, succeed in rehabilitating the association as soon as labor conditions begin to improve, as they must do shortly. On the other hand, to appoint a receiver would be simply to dissolve the association and compel the members to reorganize under a new charter. Meanwhile the membership would be completely disorganized, and the members would receive nothing, nor would the creditors have the least chance of being paid.

Our conclusion is that the best interests of the association require that a receiver be not appointed, and the district judge did not err in refusing to appoint one.

**Decree.**

The judgment appealed from is therefore affirmed.